# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By rsimmons at 5:27 pm, Jul 23, 2014

In the matter of: )
)  Chapter 13 Case
JUANITA SMITH )
)  Number 14-40097
*Debtor* )

## OPINION AND ORDER
## ON DEBTOR'S AMENDED CHAPTER 13 PLAN AND MOTION, INCLUDING MOTION TO REDUCE THE VALUE OF SECURED LIEN

Juanita Smith ("Debtor") filed her voluntary Chapter 13 case and her initial Chapter 13 Plan on January 16, 2014. Dckt. Nos. 1,2. Since then Debtor has filed three Amended Chapter 13 Plans Before Confirmation. Dckt. Nos. 19, 21, 55. The Trustee filed an Objection to Confirmation on May 21, 2014, shortly after the Court held the confirmation hearing. Dckt. No. 52. The Court entered an Order Continuing Confirmation on May 23, 2014, allowing the parties to brief the issue on whether a provision in Debtor's Plan can be confirmed when it proposes to extinguish a wholly unsecured junior lien on her residence. Dckt. Nos. 51, 53. After consideration of the parties' positions and applicable law, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Schedule A of Debtor's petition lists as an asset her residence located at 739 East Bolton Street, Savannah, Georgia (the "Property"). Dckt. No.1. The schedule lists the

Property's value at $68,700.00. *Id.* Schedule D of the petition lists two (2) claims secured by liens on the Property; a claim in the amount of $110,907.00 secured by a first lien in favor of Branch Banking & Trust Mortgage ("BB&T") and a claim of $40,000 secured by a second lien in favor of the City of Savannah Housing Department ("SHD"). *Id.* Paragraph 8 of Debtor's initial Plan states:

> The claim of City of Savannah Housing Department (loan number 105-005) is a general, unsecured claim. Said claim is a lien on Debtor's real property located at 739 E. Bolton Street, Savannah, GA, which is further identified with the Property Identification Number 2-0042-06-044 as assigned by the Chatham County Tax Assessor's Office and has a value of $68,700.00. BB&T Mortgage holds a lien on said property in the amount of $110,907.00, and its lien is superior to that of City of Savannah Housing Department. Said superior lien of BB&T Mortgage renders the lien of City of Savannah Housing Department wholly unsecured as provided by 11 U.S.C. §§ 506(a) and 1322(b)(2).

Dckt. No. 2.

At the confirmation hearing on May 21, 2014, Debtor asked the Court to adopt the ruling in Best v. GMAC Mortg., LLC (In re Best), 2012 WL 2905748 (Bankr. S.D. Ga. July 5, 2012)(Dalis, J.), and find that a wholly unsecured lien can be "stripped off" through the Chapter 13 plan confirmation, and that an adversary proceeding is not required.[1] Dckt. No. 51. The Trustee objected, taking the position that Debtor must file an adversary proceeding under Bankruptcy Rule 7001 in order to strip off SHD's lien. *Id.* The Court noted

---

[1] For clarification, a "strip off" is a variant of a "strip down." In a strip off the entirety of the lien is invalidated, while a strip down bifurcates a partially secured lien and only the unsecured portion is removed.

2

that in the past it has required an adversary proceeding to strip off a lien based on the language of the Rule, which requires an adversary proceeding to determine the "validity" of a lien. *Id.* However, a large body of opinion holds a contrary view and in general finds that if the only "validity" question presented is the extent of equity, if any, to which the lien attaches, the "validity" can be decided by motion or plan provision under §§ 506 and 1322. In light of these cases, I agreed to review Best and asked the parties to submit supporting briefs on the issue. *Id.* I also observed at the hearing that while the language of Debtor's Plan values SHD's claim at $0.00 and classifies the claim as wholly unsecured, it does not clearly state Debtor's intention with regard to the lien itself. *Id.* Debtor then amended Paragraph 8 of her Plan to add the following language:

> Debtor will serve this Plan to City of Savannah Housing Department by certified mail, to the attention of "Officer/Managing Agent," within five (5) business days of filing this Plan with the court.
>
> Upon completion of this Plan by Debtor and receipt of a discharge, the creditor City of Savannah Housing Department's lien shall be satisfied, and creditor shall promptly cancel said lien with the Superior Court.

Dckt. No. 55. Thus, as amended, Debtor requests that confirmation of her Chapter 13 Plan cancel and void SHD's lien on the Property.

## CONCLUSIONS OF LAW

It has long been recognized in bankruptcy law that unless federal interests require otherwise, property interests are created and defined by state law. Butner v. U.S., 440

3

U.S. 48, 55 (1979).

> The Federal Constitution, Article I, § 8, gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. In view of this grant of authority to the Congress it has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended. While this is true, state laws are thus suspended *only to the extent of actual conflict* with the system provided by the Bankruptcy Act of Congress. Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the state in certain particulars, although such recognition may lead to different results in different States. For example, the Bankruptcy Act recognizes and enforces the laws of the states affecting dower, exemptions, the *validity of mortgages*, priorities of payment and the like. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the act is not alike in all the states.

*Id.* at 54 n.9 (emphasis added)(citations omitted)(internal quotation marks omitted).

In its later decision, Nobelman v. American Sav. Bank, 508 U.S. 324 (1993), the Supreme Court reaffirmed the importance of applying state property law in the bankruptcy context when it was asked to decide whether an underwater mortgage could be avoided despite the anti-modification provisions of 11 U.S.C. § 1322(b)(2).[2] The Court read

---

[2] 11 U.S.C. § 1322(b)(2) allows the Chapter 13 debtor's plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."

that exception broadly, focusing on the fact that what is prohibited is a modification of the lender's "rights," not merely the status of its claim. *Id.* at 328. There, the debtors attempted to "strip down" the lender's secured claim in their plan to the fair market value of the residence and treat the remaining portion of the bank's claim as unsecured pursuant to 11 U.S.C. § 506(a).[3] *Id.* at 326. The Court held that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," but even accepting the debtors' valuation, "the bank is still the 'holder' of a 'secured claim,'" because the debtors' home retained some value as collateral. *Id.* at 328-29. Therefore, the bank's "rights" as the holder of a secured claim remained protected by § 1322(b) and were not necessarily "limited by the valuation of its secured claim." *Id.* at 329. These "rights" the Court held, are determined by the relevant mortgage instruments which are enforced under state law and include "the right to retain the lien until the debt is paid off." *Id.*

The Eleventh Circuit in a later case limited the scope of Nobelman when it ruled that a lender's lien on the debtor's residence is protected against modification under § 1322(b)(2) only if it retains some value in the collateral but not when the claim is wholly unsecured. Tanner v. FirstPlus Fin., Inc. (In re Tanner), 217 F.3d 1357 (11th Cir. 2000)(lien avoidance action brought in an adversary proceeding). The court held "that the only reading

---

[3] (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1).

of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a) and then to protect from modification any claim that is secured by any amount of collateral in the residence." *Id.* at 1360; *see also* Branigan v. Davis (In re Davis), 716 F.3d 331 (4th Cir. 2013)(avoidance action brought in a motion); Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220 (9th Cir. 2002)(adversary proceeding); Lane v. W. Interstate Bancorp (In re Lane), 280 F.3d 663 (6th Cir. 2002)(plan provision); Pond v. Farm Specialist Realty (In re Pond), 252 F.3d 122 (2d Cir. 2001)(adversary proceeding); Bartee v. Tara Colony Homeowners Ass'n (In re Bartee), 212 F.3d 277 (5th Cir. 2000)(plan provision); McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606 (3d Cir. 2000)(adversary proceeding); Fisette v. Keller (In re Fisette), 455 B.R. 177 (8th Cir. BAP 2011)(plan provision); Griffey v. U.S. Bank (In re Griffey), 335 B.R. 166 (10th Cir. BAP 2005)(adversary proceeding); Domestic Bank v. Mann (In re Mann), 249 B.R. 831 (1st Cir. BAP 2000)(plan provision).

This view is the overwhelming majority, but by no means the universal view of modification of wholly unsecured second liens.[4] For a time there was a distinct minority view, albeit one which is now nearing extinction. *See* American Gen. Fin., Inc. v. Dickerson (In re Dickerson), 229 B.R. 539, 542 (M.D. Ga. 1999)(reasoning that § 1322(b)(2)

---

[4] 11 U.S.C. § 101(37) states: "'Lien' means charge against or interest in property to secure payment of a debt . . . ." So the bankruptcy definition encompasses both mortgages and deeds to secure debt, also referred to frequently as security deeds.

emphasizes the existence of the lien, not the value of the lien[5] because in the clause prohibiting modification of homestead liens, Congress could have repeated the term of art "secured claim" instead of using the phrase "a claim secured . . . by"), *rev'd*, 222 F.3d 924 (11th Cir. 2000). On appeal, the Eleventh Circuit expounded on this minority view even as it ultimately reversed the district court and followed Tanner:

> However, were we to decide this issue on a clean slate, we would not so hold. We find persuasive the district court's reasoning that providing "anti-modification" protection to junior mortgagees where the value of the mortgaged property exceeds the senior mortgagee's claim by at least one cent, as prescribed by the Supreme Court's decision in Nobelman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), but denying that same protection to junior mortgagees who lack that penny of equity, places too much weight upon the valuation process. As we have noted "[v]aluation outside the actual market place is inherently inexact." Rushton v. Commissioner of Internal Revenue, 498 F.2d 88, 95 (5th Cir.1974). Given the unavoidable imprecision and uncertainty of the valuation process, we think that choosing to draw a bright line at this point is akin to attempting to draw a bright line in the fog. Moreover, we believe that Congress's use of the phrase "a claim secured only by" instead of the term "secured claim" to describe those claims which could not be modified in a Chapter 13 bankruptcy plan supports the conclusion that the "anti-modification" protection of § 1322(b)(2) should extend to all claims secured solely by the debtor's principal residence, not just those junior homestead mortgages where there is sufficient equity in the subject property to support both the entire senior and part of the junior homestead mortgages. *See* 11 U.S.C. § 1322(b)(2); *see*

---

[5] Note the definition of "security interest" in 11 U.S.C. § 101(51) has no valuation component. If focuses solely on the type, not the value of the interest.

> also United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir.1999) ("The starting point for all statutory interpretation is the language of the statute itself.").
>
> Nonetheless, under the prior precedent rule we must apply the rule established by this court in In re Tanner, 217 F.3d 1357 (11th Cir.2000) (holding that § 1322(b)(2) of the Bankruptcy Code protects only those homestead mortgages that are secured by some existing equity in the debtor's principal residence according to § 506(a)).

American Gen. Fin., Inc. v. Dickerson (In re Dickerson), 222 F.3d 924, 926 (11th Cir. 2000) (alteration in original).[6]

---

[6] If I were free to decide this issue on a clean slate, I would follow the holding which Dickerson foreshadowed it would favor if not constrained by Tanner.

Although not cited by Dickerson, two bankruptcy court cases articulate clearly the rationale Dickerson found persuasive. *See* Barnes, citing with approval an earlier New Jersey bankruptcy case:

> Jones held that the proper reading of [Nobelman] was as an endorsement of creditor rights, where "rights" were defined by state law and the underlying mortgage contract. A court analyzing a "stripoff" situation in Chapter 13, therefore, should look first to whether the creditor holds a mortgage secured only by the debtor's principal residence. If so, the creditor's rights under § 1322(b)(2) may not be modified regardless of the presence or absence of underlying equity in the residence, and there is no right to look to § 506(a) for valuation. A mortgage stripoff epitomizes a modification of creditor rights and is not allowed in Chapter 13 under § 1322(b)(2) and Nobelman.

Barnes v. American Gen. Fin. (In re Barnes), 207 B.R. 588, 592 (Bankr. N.D. Ill. 1997)(citation omitted), *abrogation recognized by* Brendan Mortg. Inc. v. Lanum, 2013 WL 6634012, at *3 n.7 (N.D. Ill. Dec. 16, 2013).

*See also* the thorough and persuasive discussion in Enriquez:

> Nobelman also tells us that § 1322(b)(2) was intended to prevent the modification of the "rights" of the holder of the security interest. Further, we are reminded that state law generally tells us what those rights are. Lam pays lip service to that notion, but then overlooks a number of "rights" which the creditor has under state law. In Lam, the court wrote:
>
>> An analysis of the state law "rights" afforded a holder of an unsecured "lien", if such a situation exists, indicates these rights are empty rights from a practical, if not a legal standpoint.
>
> Without explanation or citation to any authority, the BAP then [states]:
>
>> A forced sale of the property would not result in any financial return to the lienholder, even if a forced sale could be accomplished where the lien attaches to nothing. Nothing secures the "right" of the lienholder to continue to receive monthly installment payments, to retain the lien until the debt is paid off, or the right to accelerate the loan upon default, if there is no security available to the lienholder to foreclose on in the event the debtor fails to fulfill the contract

8

Here, Schedule D lists the Property's value at $68,700.00 and BB&T as having a claim secured by a first lien in the amount of $110,907.00. Under Tanner, § 1322(b)(2)'s protection from modification does not apply to SHD's wholly unsecured junior lien on Debtor's principal residence. Accordingly, in this district, as in most others, a debtor

---

payment obligations.

Except for the notion that a forced sale may not yield any money at the moment in time the creditor is wholly without equity, the statements are wrong.

Under applicable state law, when a mortgage lender enters into a promissory note and trust deed arrangement with a person, the lender acquires a number of rights, including the right to foreclose on the interest of the obligor upon default. If the obligor is in arrears to a senior lienholder, the junior lienholder has the right to cure the arrearage to preserve its position. Most importantly, the junior lienholder has the "right" to gamble that the property will appreciate over time and that at some point in time in the future, if a forced sale becomes necessary, there will be economic value remaining for the junior lienholder. Allowing a debtor in Chapter 13 to pick one point in time and say that at that point in time there is no value in the property to which the security interest can attach, and therefore the creditor's contractual lien "rights" should be extinguished clearly is a modification of those rights within the meaning of § 1322(b)(2) and Nobelman, and is prohibited by the express language of that statute and the teachings of Nobelman.

One of the errors in the analysis in Lam by the BAP is in thinking that under state law rights granted to a creditor under a note and deed of trust somehow depend upon the existence of value or equity in the collateral to which a security interest can attach. That is not the law of the state, nor has the BAP suggested any authority exists for that proposition. To the contrary, under state law a creditor's rights are fixed by the terms of the contracts between the parties, and are not dependent for their effectiveness on the existence at any particular moment in time of value or equity in the collateral to which those "rights" can attach.

This Court ultimately concludes that Congress intended by § 1322 to afford a unique protection to lenders whose sole security is the primary residence of a Chapter 13 debtor regardless of the value of the property or extent of senior liens as of the petition date. There is no indication that the protection was to be limited to lenders whose equity position had not been eroded as of the petition date.

In re Enriquez, 244 B.R. 156, 161 (Bankr. S.D. Cal. 2000)(citations omitted), *abrogated by* Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220 (9th Cir. 2002).

These excerpts are representative of the minority view which I find persuasive. Based on the emphasis Justice Thomas placed in Nobelman on the importance of the bargained for state law "rights" between the mortgagor and the mortgagee, it is not self-evident that the Supreme Court would strip off the lien merely because the monetary claim is rendered valueless. The bundle of bargained for "rights" includes the ability of the mortgagee to retain its lien through bankruptcy and recognize any ascension in value of the property that might occur. Although bankruptcy eliminates any *in personam* obligation of the debtor, the lienholder retains *in rem* rights which may be remote, even ephemeral, but they are nevertheless valid as a matter of state law.

may strip off wholly unsecured junior liens.

While Tanner clearly entitles a debtor to strip off a junior mortgagee's wholly unsecured lien on his residence, what is not clear from the opinion is the procedural avenue the debtor must take to obtain a ruling voiding the lien. Indeed, Tanner was decided in a case where the action was brought as an adversary proceeding. Perhaps we are to infer, as a number of courts have (*see infra*), that if the debtor can modify the "rights" of a wholly unsecured junior lienholder notwithstanding the clause prohibiting modification of homestead liens of § 1322(b)(2), and if one of those "rights" includes the retention of the lien until the debt is paid off, then maybe a plan can include not only adjustment of the required payment on the claim, but also the voiding of the lien through confirmation. This is essentially what Debtor is advocating by requesting the Court to void SHD's valid state lien as provided in Paragraph 8 of her Plan. While this may be a valid application of Tanner, it is not clear to me what statutory or rule authority there is to void a security deed in a Chapter 13 plan as opposed to an adversary proceeding.

Georgia recognizes two types of real estate encumbrance options. One is the mortgage. *See* O.C.G.A. § 44-14-30. The second is the deed to secure debt. *See* O.C.G.A. § 44-14-60. Under Georgia law, deeds to secure debt are not mere state-created liens as mortgages are, but constitute an absolute transfer of title to secure the debt. *Id.*

> Whenever any person in this state conveys any real property by deed to secure any debt to any person loaning or advancing the grantor any money or to secure any other debt and takes a bond for title back to the grantor upon the payment of the debt or debts . . . the conveyance of real . . . property shall pass the title of the property to the grantee until the debt or debts which the conveyance was made to secure shall be fully paid. Such conveyance shall be held by the courts to be an absolute conveyance, with the right reserved by the grantor to have the property reconveyed to him upon the payment of the debt or debts intended to be secured agreeably to the terms of the contract . . . .

*Id.*

Under Georgia law, the bankruptcy of a debtor does not in and of itself divest a lender's title to the property. Broach v. Barfield, 57 Ga. 601 (1876).

> Before the grantor in a security deed would become reinvested with title, he must pay or offer to pay the debt for which the security deed was given, and a discharge in bankruptcy of the debt of the grantor does not operate to satisfy the conditions of the security deed or reinvest title in the grantor.

Thomas v. Stedham, 208 Ga. 603, 606 (1952). I construe this to mean that the security deed remains "valid," at least *in rem,* as a matter of Georgia law.

Under Butner, "validity of mortgages" remains a matter of state law unless that state law is in "actual conflict" with the Bankruptcy Code. Whether our state law

11

providing that a deed to secure debt survives *in rem* after a debtor's *in personam* discharge is in "actual conflict" with bankruptcy law presents a classic question of validity. Whatever the outcome of that determination, Bankruptcy Rule 7001(2) states that "a proceeding to determine the validity, priority, or extent of a lien" is an adversary proceeding.

In the past this Court has required debtors to file an adversary proceeding in order to strip a lien. This has been characterized as a minority view by courts which reach a different result. *See* In re Sadala, 294 B.R. 180, 183 (Bankr. M.D. Fla. 2003). These courts place great emphasis on a narrow definitional meaning of the term "validity." "[T]he term 'validity' means the existence or legitimacy of the lien itself . . . ." In re King, 290 B.R. 641, 648 (Bankr. C.D. Ill. 2003)(citation omitted)[7]. Utilizing this definition, the majority of bankruptcy courts conclude "that an adversary proceeding is only needed when the basis of the lien itself is in dispute and that no adversary proceeding is needed simply to value and to declare void a totally unsecured claim." Sadala, 294 B.R. at 182.[8]

However, missing from the circuit cases listed *supra* at page 6 is any discussion on this procedural point – namely, how an attack on a mortgage lien or security

---

[7] *See also* Best v. GMAC Mortg., LLC (In re Best), 2012 WL 2905748, at *4 (Bankr. S.D. Ga. July 5, 2012)(Dalis, J.); In re Sadala, 294 B.R. 180, 183 (Bankr. M.D. Fla. 2003); In re Millspaugh, 302 B.R. 90, 96 (Bankr. D. Idaho 2003); In re Hudson, 260 B.R. 421, 433 (Bankr. W.D. Mich. 2001).

[8] *See also* Millspaugh, 302 B.R. at 97 (citing six (6) bankruptcy decisions for the same proposition); Best, 2012 WL 2905748, at *5 (citing five (5) additional bankruptcy decisions); 10 Collier on Bankruptcy ¶ 7001.03[1] (16th ed. rev.2013).

deed based solely on "value" is not an attack on its "validity" under state law if that state law holds that a security deed remains viable after a bankruptcy discharge. In broad terms, these cases typically set a value under § 506(a) first and then conclude that lack of value renders the lien inoperative, thus permitting its avoidance. However, nothing in Georgia law renders the *in rem* elements of a deed to secure debt avoidable or invalid simply because it has no underlying monetary value to secure the balance, and none of these cases expressly hold otherwise. Again, Nobelman, *in a bankruptcy case*, held that among the creditor's rights is the "right to retain the lien until the debt is *paid off*." Nobelman, 508 U.S. at 329 (emphasis added).

Therefore, based on precedent of the Supreme Court of Georgia, deeds to secure debt survive bankruptcy intact and are therefore presumptively "valid" absent a contrary determination authorized by the Bankruptcy Code. The avenue to contest "validity" is created in Rule 7001(2) and appears nowhere else. While § 506(d) declares certain liens "void," it does not dictate the procedural method required to obtain a judicial adjudication of that fact. Only Rule 7001 provides that mechanism, and I hold that the procedural safeguards inherent in that rule should not be disregarded based on narrow definitions of "validity" adopted by many courts. The Due Process Clause of the Fifth Amendment forbids the deprivation of a property right without due process of law[9], and the adoption of a Rule

---

[9] U.S. Const. amend. V.

13

of Procedure by the judiciary constitutes the template for assessing due process.[10]

        I do not choose to narrowly parse the term "validity" in the face of Georgia law which makes these instruments presumptively valid. Because the deed to secure debt retains *in rem* viability under Georgia law, displacement of those rights must be viewed as a "validity" challenge. Rule 7001 is clear; it does not state that one type of validity challenge is covered by the Rule while others are not. Rather, any challenge to the viability of a lien must be considered within the confines of an adversary proceeding under the Rules and as a matter of due process. *See* In re Forrest, 424 B.R. 831, 833 (Bankr. N.D. Ill. 2009)("Valuations may be appropriate for adequate protection, impairment, or similar purposes, but when the existence of the lien itself is at issue, then the "validity" and "extent" of the lien are certainly at issue, so an adversary proceeding is necessary."); *see also* In re Enriquez, 244 B.R. 156, 158 (Bankr. S.D. Cal. 2000)(requiring an adversary), *abrogated on other grounds by* Zimmer, 313 F.3d 1220; In re Crestwood Co., 127 B.R. 213, 215 n.1

---

[10] Indeed, a proposed amendment to Rule 7001 is under review by the Committee on Rules of Practice and Procedure as part of a broader project to develop and approve a National Chapter 13 Form Plan. The amendment the Committee is considering would resolve the differing views of how procedurally to adjudicate lien strip off cases. Currently, Rule 7001(2) states: "The following are adversary proceedings: (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under rule 4003(d)." The latest proposed amendment to Rule 7001(2) states: "The following are adversary proceedings: (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, *not including* a proceeding under *Rule 3012* or Rule 4003(d)." (Emphasis added). The Committee is also considering an amendment to Rule 3012 which will allow a party in interest to request the court to determine the amount of a secured claim under § 506(a) through the Chapter 13 Plan.

    I have serious misgivings over the advisability of such procedural changes, but that decision is in the hands of others. What I still must do is apply the current Rule as written. The fact that the Committee is considering an amendment suggests that the Rule as now written can properly be read as requiring an adversary in these circumstances.

(Bankr. E.D. Ark. 1991)(same).

I recognize the end game to the litigation may be the same, but we live in a legal system which is constrained both by substantive law and procedural protections. One cannot ignore the latter in adjudicating this issue, even if the outcome is not changed, anymore than one can bypass the Fourth or Sixth Amendments in the name of efficiency.

And in fact, there is no way to know if the result would be the same. This Plan provision was unopposed by the creditor. Did it agree that Debtor was legally entitled to this outcome, or did it not pay sufficient attention to the Plan provisions? Perhaps it should have done so, but part of the purpose of Rule 7001 must certainly be to ensure that when the issue is the enforceability of a state created lien, the defendant is entitled to the most infallible degree of notice of the nature and serious consequences of the proceeding brought against it. The procedural safeguards of adversary proceedings, including the Rules of Pleading of Bankruptcy Rule 7008 which require a specific "demand for relief sought," are calculated to achieve this purpose.[11]

---

[11] In acknowledging that the substantive result may not differ simply because of the procedure employed to bring the issue forward for adjudication, I recognize the obvious: every circuit court which has ruled on this issue has upheld the right to strip off wholly unsecured junior liens. Yet, in some ways that result does not mesh comfortably within the dual state-federal interplay between contractual rights and debtor relief. The description of "rights" retained by lienholders in Nobelman is hauntingly similar to what the Supreme Court of Georgia has held – namely, that the discharge of an individual in bankruptcy does not discharge the lender's *in rem* "right" to payment in full. So, is there still room to argue that the prevailing view of the circuit courts is not the final word?

If one revisits those cases' statutory analysis, their result is in fact unassailable if it is limited to the *in personam* obligation of debtors to pay most claims in a Chapter 13 plan. But it is axiomatic that bankruptcy courts apply state contract law, whether based on mortgages or simple contracts, unless bankruptcy law trumps the state

15

# ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is the

provision. Recognizing the delicate balance of state and federal interests inherent in the Bankruptcy Code, it is instructive to revisit what the overarching purpose of the code is. It has been characterized as a means to provide the honest but unfortunate debtor with a "fresh start." That fresh start is achieved at the end of the bankruptcy case by the entry of discharge of certain specific debts.

As it applies in Chapter 13, the code provides that "the court shall grant the debtor a discharge of all debts . . . ." 11 U.S.C. § 1328(a). The code does not mention the avoidance of mortgage liens, only the release of the debtor from any further payment obligation. And under 11 U.S.C. § 524(a)(2), a Chapter 13 discharge operates as "an injunction against the commencement or continuation of an action . . . to collect . . . any such debt as a personal liability of the debtor . . . ."

To avoid these residual *in rem* liens, the majority view focuses on the secured status of the monetary claim determined under § 506(a). The vanishing minority view focuses on what the holder has: a "claim secured only by" the debtor's principal residence, which is a non-modifiable claim under § 1322(b)(2). The crux of the matter may be whether a creditor can have a wholly unsecured *monetary* claim against the debtor yet still be the holder of an *in rem* "claim secured only by" the debtor's principal residence. Here definitions matter. 11 U.S.C. § 101(51) defines security interest as a "lien created by an agreement." It has no valuation element. It is not claim based. Rather, it is an *in rem* concept focusing on a type of interest, not its value. Nobelman contains this passage:

> Petitioners urge us to apply the so-called "rule of the last antecedent," which has been relied upon by some Courts of Appeals to interpret § 1322(b)(2) the way petitioners favor. *E.g.*, In re Bellamy, 962 F.2d 176, 180 (CA2 1992); In re Hougland, 886 F.2d 1182, 1184 (CA9 1989). According to this argument, the operative clause "other than a claim secured only by a security interest in ... the debtor's principal residence" must be read to refer to and modify its immediate antecedent, "secured claims." Thus, § 1322(b)(2)'s protection would then apply only to that subset of allowed "secured claims," determined by application of § 506(a), that are secured by a lien on the debtor's home—including, with respect to the mortgage involved here, the bank's secured claim for $23,500. We acknowledge that this reading of the clause is quite sensible as a matter of grammar. But it is not compelled. Congress chose to use the phrase "claim secured ... by" in § 1322(b)(2)'s exception, rather than repeating the term of art "secured claim." The unqualified word "claim" is broadly defined under the Code to encompass any "right to payment, whether ... secure[d] or unsecured" or any "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether ... secure[d] or unsecured." 11 U.S.C. § 101(5) (1988 ed., Supp. III). It is also plausible, therefore, to read "a claim secured only by a [homestead lien]" as referring to the lienholder's entire claim, including both the secured and the unsecured components of the claim. Indeed, § 506(a) itself uses the phrase "claim ... secured by a lien" to encompass both portions of an undersecured claim.

Nobelman v. American Sav. Bank, 508 U.S. 324, 330-31 (1993)(alterations in original). So the Supreme Court read "claim secured only by a security interest" as being distinct from a "secured claim" on the facts before it and denied modification of the lender's rights under § 1322(b)(2). The prevailing circuit view is that Nobelman does not require the same result when the lien is valueless in a monetary sense, but that is an open question.

ORDER of this Court that Debtor's Chapter 13 Plan provision proposing to render SHD's lien wholly unsecured and directing SHD to cancel said lien upon receipt of discharge does not comport with the procedural requirements of Rule 7001. Debtor is free to file an adversary proceeding to litigate this issue. Confirmation of the Plan, as amended, is DENIED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 23rd day of July, 2014.